## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| HOLLISTER INC., | |
| Plaintiff, | |
| v. | Case No. 24 CV 5642 |
| | Judge Georgia N. Alexakis |
| BRENDAN SUGRUE, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Brendan Sugrue worked at Hollister, Inc., beginning in 2000 until the company terminated him in March 2023. In February 2024, Sugrue sued Hollister and its parent, The Firm of John Dickinson Schneider ("JDS"), in the Circuit Court of Lake County, Illinois, for state-law violations stemming from his termination. Hollister filed three state-law counterclaims against Sugrue in the Lake County action, all arising from Sugrue's alleged exfiltration of Hollister trade secrets after he learned of his termination. Around the same time Hollister filed its counterclaims, Hollister also filed the present suit alleging violations of federal and state law.

Sugrue has moved to dismiss this suit pursuant to Federal Rule of Civil Procedure 12(b)(6), or, in the alternative, to stay the suit under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). For the following reasons, the Court grants Sugrue's motion to stay. [16].

BACKGROUND

Hollister is an Illinois-based company that develops, manufactures, and markets health care products. [1] ¶¶ 1, 4. Sugrue began working for Hollister in Ireland as a manufacturing manager in 2000 and in 2013 was relocated to Libertyville, Illinois, when he was promoted to Director of Global Operations. *Id.* ¶ 8. In August 2022, Hollister demoted Sugrue to Vice President Manufacturing Strategy. *Id.* ¶ 10. About six months later, Hollister told Sugrue that the company was eliminating his position and that he would be terminated as of March 31, 2023. *Id.* ¶ 28.

Once Sugrue learned of his termination, Hollister says he "secretly began exfiltrating substantial amounts of Hollister's trade secrets and other proprietary information from Hollister's computing environment by downloading information to personal and/or externally-owned electronic devices and emailing information to his personal email account." *Id.* at 1. According to Hollister, Sugrue "subsequently attempted to cover up" this misconduct "by deleting materials from Hollister's computing assets and wiping his personal devices, even after Hollister's Chief Human Resource Officer told him not to." *Id.* at 2. Sugrue eventually turned over his Hollister laptop, his personal computer, his personal iPad, a USB drive, a smartphone, and other electronic devices so that Hollister could conduct a forensic review. *Id.* at ¶¶ 87–88. Hollister says Sugrue has refused to guarantee that he has not provided any trade secrets to third parties (other than the service he used to wipe his personal computer). *Id.* ¶ 91.

In February 2024, Sugrue filed suit against Hollister and JDS in the Circuit Court of Lake County, Illinois, alleging violations of state law arising from his termination. *Id.* ¶ 92; *see also* [16-1].[1] Among other things, Sugrue's state suit claims that Hollister: (1) breached his employment agreement by failing to pay him severance and other compensation, [16-1] ¶¶ 45–61; (2) was unjustly enriched by failing to provide Sugrue the compensation he was owed, *id.* at ¶¶ 61–65; and (3) has unlawfully converted his personal electronic devices by refusing to return them, *id.* ¶¶ 66–70. On July 8, 2024, Hollister answered Sugrue's complaint and brought three counterclaims against Sugrue, alleging (1) breach of contract, (2) breach of fiduciary duty, and (3) spoliation of evidence. *See generally* [16-2]. As discussed in more detail below, these counterclaims were rooted in Sugrue's alleged exfiltration of Hollister's trade secrets and subsequent attempts to cover up his misconduct. *Id.* ¶¶ 80–109.

Five days before Hollister filed its counterclaims against Sugrue in the state action, Hollister filed this action in federal court, alleging (1) misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.*, (2) misappropriation of trade secrets under the Illinois Trade Secrets Act ("ITSA"), 765 ILCS 1065/1 *et seq.*, and (3) violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030. [1]. Sugrue has moved to dismiss all three claims for

---

[1] The parties do not contest the Court's ability to consider documents beyond the federal complaint in deciding this motion. Consistent with the approach employed when evaluating a motion brought under Federal Rule of Civil Procedure 12(b)(1), the Court accepts as true the well-pleaded allegations in the federal complaint and draws all inferences in plaintiff's favor, though in determining if abstention is appropriate, it also properly looks beyond the allegations and considers evidence submitted on that issue (*e.g.*, the state court claims and counterclaims). *See Heuer v. BMO Harris Bank, N.A.*, No. 23 CV 6153, 2024 WL 3791630, at *2 (N.D. Ill. Aug. 13, 2024); *Loughran v. Wells Fargo Bank, N.A.*, No. 19 C 4023, 2019 WL 6349890, at *2 (N.D. Ill. Nov. 27, 2019), *aff'd*, 2 F.4th 640 (7th Cir. 2021); *see also St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007).

3

failure to state a claim pursuant to Rule 12(b)(6). [16]. In the alternative, Sugrue asks the Court to stay this action pursuant to *Colorado River. See id.*

## DISCUSSION

### A. *Colorado River* Abstention Principles

"Federal courts have a virtually unflagging obligation to exercise the jurisdiction given them." *Loughran v. Wells Fargo Bank, N.A.*, 2 F.4th 640, 646 (7th Cir. 2021) (cleaned up) (quoting *Colorado River*, 424 U.S. at 817). "Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River*, 424 U.S. at 813. Under *Colorado River*, a federal court may stay a suit when a parallel state suit is underway, but only with the "clearest of justifications." *Tyrer v. City of S. Beloit, Ill.*, 456 F.3d 744, 751 (7th Cir. 2006) (quoting *Colorado River*, 424 U.S. at 819). "The primary purpose of the *Colorado River* doctrine is to conserve both state and federal judicial resources and prevent inconsistent results." *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1018 (7th Cir. 2014).

The Court conducts a two-part analysis to determine whether a stay is appropriate under *Colorado River. Id.* The first step asks whether the state and federal actions are parallel. *Id.* If not, the federal action cannot be stayed, and the Court need not address the second step of the analysis. *Id.* If the actions are parallel, the Court weighs 10 factors to determine "whether the necessary exceptional circumstances exist to support a stay or dismissal." *Loughran*, 2 F.4th at 647 (quoting *DePuy Synthes Sales, Inc. v. OrthoLA, Inc.*, 953 F.3d 469, 477 (7th Cir. 2020)). These factors include:

> 1) whether the state has assumed jurisdiction over property; 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; 4) the order in which jurisdiction was obtained by the concurrent forums; 5) the source of governing law, state or federal; 6) the adequacy of state-court action to protect the federal plaintiff's rights; 7) the relative progress of state and federal proceedings; 8) the presence or absence of concurrent jurisdiction; 9) the availability of removal; and 10) the vexatious or contrived nature of the federal claim.

*Tyrer*, 456 F.3d at 754 (quoting *Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 701 (7th Cir. 1992)); *see also Lumen Constr. Corp. v. Brant Const. Co.*, 780 F.2d 691, 694–95 (7th Cir. 1985). "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." *Colorado River*, 424 U.S. at 818–19.

## B. The Federal and State Cases Are Parallel.

For cases to be considered parallel under *Colorado River*, there must be a "substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Lumen*, 780 F.2d at 695 (citing *Arizona v. San Carlos Apache Tribe of Arizona*, 463 U.S. 545, 567 (1983)). Although the cases need not be identical, the court must examine whether "substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Freed*, 756 F.3d at 1019 (quoting *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1288 (7th Cir. 1988)). Part of this analysis examines "whether the cases raise the same legal allegations or arise from the same set of facts." *Id.* (citing *Tyrer*, 456 F.3d at 752). "[A]ny doubt regarding the parallel nature of the foreign suit should be resolved in

favor of exercising jurisdiction." *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 520 (7th Cir. 2001).

Hollister contends that the cases are not parallel because JDS is a defendant in the state action but is not a party in this case. This factor is not dispositive. "Suits need not be identical to be parallel, and the mere presence of additional parties or issues in one of the cases will not necessarily preclude a finding that they are parallel." *Id.* at 518 (internal citation omitted). "If the rule were otherwise, the *Colorado River* doctrine could be entirely avoided by the simple expedient of naming additional parties." *Lumen*, 780 F.2d at 695. In the state suit, only Hollister—not JDS—brings counterclaims against Sugrue, and those are the claims in the state action that are potentially parallel with this suit. [16-2] at 36. As between the state counterclaims and the present suit, the parties are identical. *See Tyrer*, 456 F.3d at 752 n.9 (cases deemed parallel even though plaintiff named additional defendants in state action).

The Court next looks to see whether the issues in the two cases are "substantially the same." *Freed*, 756 F.3d at 1019. Here, Hollister's counterclaims in the state action and its claims in this federal action arise from the same occurrence and set of facts. Hollister's first counterclaim for breach of contract is based on Sugrue's use and disclosure of Hollister's trade secrets after he found out he was being terminated. *See, e.g.*, [16-2] ¶ 83 (alleging that "Sugrue breached the [Voluntary Separation Agreement] by acquiring, using and/or disclosing Hollister's trade secrets and other confidential information … in violation of his nondisclosure obligations").

6

Hollister's second counterclaim for breach of fiduciary duty is similarly based on the "exfiltration of trade secrets from Hollister's computing assets." *Id.* ¶ 96. The evidentiary basis between these counterclaims and Hollister's DTSA and ITSA claims in the instant case is the same: the claims depend on whether (and, if so, how) Sugrue used or disclosed Hollister's trade secrets in February and March of 2023. *See, e.g.*, [1] ¶¶ 103–04, 120, 123, 126. Hollister's third counterclaim for spoliation of evidence is based, at least in part, on the deletion of "hundreds of files from Hollister's computing assets," *see* [16-2] ¶ 105, mirroring that portion of Hollister's CFAA claim alleging that Sugrue "delet[ed] electronic files from the Hollister-issued computing devices and/or the Hollister computing network," *see* [1] ¶ 131.

This factual overlap is even clearer when comparing the allegations supporting both sets of claims side-by-side. The relevant pleadings both contain sections titled "Sugrue's Misappropriation of Trade Secrets and Other Misconduct" that go on to recite identical allegations related to Sugrue's alleged exfiltration of trade secrets. *Compare* [16-2] ¶¶ 23–56, *with* [1] ¶¶ 26–38, 75–95.[2] As just one example, both recite the following allegation verbatim:

> On or about March 25, 2023, Hollister discovered through its internal forensic audit that Sugrue had exfiltrated large amounts of Hollister and other Group Company property from Hollister's computing assets on February 2, February 7, February 15, February 16, February 20, February 21, February 28, March 2, March 6, March 7, March 8, March 9, March 14, and March 16, 2023, including downloading the property to one or more external mobile devices, emailing the property to Sugrue's personal email address, and deleting property from Hollister's computing assets.

---

[2] Hollister's federal complaint does contain some allegations not in its state counterclaims, *see* [1] ¶¶ 39–74, but those allegations merely describe in more detail the circumstances surrounding Sugrue's alleged exfiltration of trade secrets.

[16-2] ¶ 35; [1] ¶ 38. These identical allegations form the basis of Hollister's breach of contract, breach of fiduciary duty, and spoliation of evidence counterclaims in the state action and Hollister's DTSA, ITSA, and CFAA claims in this action. *See also* [1] ¶ 109 (Hollister alleges that "Sugrue's misconduct was not only a violation of the … 2022 Employment Agreement, the VSA, and common and statutory law, but also … a willful and malicious misappropriation of Hollister trade secrets in violation of the DTSA"); *id.* ¶¶ 121, 123 (Hollister alleges that in violating ITSA through the misappropriation of trade secrets, Sugrue also breached his contractual obligations); *id.* ¶ 132 (Hollister alleges that by engaging in misconduct "for the purpose of misappropriating Hollister's confidential information and trade secrets," Sugrue also "breached his fiduciary duties and other obligations owed to Hollister").

To be sure, Hollister's counterclaims in the state action arise under different causes of action from its claims in this action. And because the causes of action are distinct, the legal issues will vary to some degree between the state and federal cases. For example, this suit may eventually address whether Sugrue's actions constitute "misappropriation" under the DTSA and ITSA, whereas the breach of contract counterclaim in the state action will assess whether Sugrue's conduct violated the terms of the parties' VSA. Hollister maintains that this lack of symmetry on the relevant law means that the cases are not parallel. [25] at 13. But "the parallel nature of concurrent cases cannot 'be dispelled by repackaging the same issue under different causes of action.'" *Loughran*, 2 F.4th at 649 (quoting *Clark v. Lacy*, 376 F.3d 682, 687 (7th Cir. 2004)); *see also Driftless Area Land Conservancy v. Valcq*, 16 F.4th

508, 526 (7th Cir. 2021) ("[P]erfect symmetry isn't necessary."). The central question under *Colorado River* is whether there is a "substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Lumen*, 780 F.2d at 695. Here, if the state court determines that Sugrue did not engage in the trade-secret-related misconduct alleged in both suits, collateral estoppel will bar Hollister from relitigating these same issues of fact. *See Freed v. Friedman*, 215 F. Supp. 3d 642, 650 (N.D. Ill. 2016) (describing that if plaintiff loses in state court, defensive collateral estoppel under Illinois law would provide defendant an "immediate victory" in federal court). And even if Hollister is successful in the state suit, *res judicata* and Illinois rules against claim splitting could obviate the need for further federal proceedings. *See Lumen*, 780 F.2d at 695; *Liebert Corp. v. Mazur*, No. 04 C 3737, 2004 WL 2095666, at *2 (N.D. Ill. Sept. 17, 2004); *Jones v. Grinnell*, No. 95 C 4695, 1995 WL 699653, at *2 (N.D. Ill. Nov. 24, 1995).[3]

Hollister maintains that the outcome here should be the same as in *Veritas Administrators, LLC v. Nowak*, No. 1:22-CV-337, 2022 WL 17986697 (N.D. Ill. Dec. 29, 2022), but the two cases are fundamentally distinct. In *Veritas*, the district court concluded that the cases did not turn on the same evidence and that resolution of the state case would not resolve the claim raised in the federal case. *Id.* at *3. Specifically, the state action involved a fraud claim based on allegations that Bruno (the state-court defendant) had lied to Nowak (the state-court plaintiff) about Nowak's

---

[3] At the same time, the Court recognizes that its "anticipation of the outcome in the state appellate court [is] not enough to justify abstention," *see Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 649 (7th Cir. 2011), and its decision to abstain therefore accounts for several other considerations.

ownership interest in a company. *Id.* Yet the plaintiff in the federal action (an LLC known as Veritas) alleged that Nowak (the defendant in the federal suit) had misappropriated trade secrets after he learned he did not own a share of the company. *Id.* The state-fraud claim against Bruno was not dispositive of the federal trade secrets claim against Nowak—whether Bruno had lied to Nowak would not resolve the question of whether Nowak could misappropriate trade secrets because even "having a partial interest in a company does not entitle an owner to misappropriate the company's trade secrets." *Id.* The two actions therefore were not parallel. *Id.* Here, unlike in *Veritas*, Hollister's state counterclaims and its claims in this action are based on the same operative facts—Sugrue's alleged exfiltration of Hollister's trade secrets.

Hollister also argues that the cases are not parallel because "Sugrue's improper access" and "infiltration into Hollister's systems" are not at issue in the state dispute. [25] at 13. The Court is not persuaded. Hollister's state counterclaims are broad enough to encompass any instances in which Sugrue exceeded his authorized access to take Hollister's trade secrets. *See, e.g.*, [16-2] ¶ 83 (alleging that Sugrue breached his contract by "acquiring … Hollister's trade secrets and other confidential information beyond the course of his duties for Hollister"); *id.* ¶¶ 96–97 (Sugrue breached his fiduciary duties via the "exfiltration of trade secrets from Hollister's computing assets" and by "deleting Hollister information … from Hollister's computing assets").

In sum, the two cases "rely on the same set of facts, present substantially similar legal issues, and involve substantially the same parties." *Freed*, 756 F.3d at 1021. Hollister's claims in this action "are premised upon the scheme that is now before the state court." *Id.* The Court therefore concludes that this action is parallel to the state court proceeding under *Colorado River*'s first step.

### C. The *Colorado River* Factors

Having determined that the two cases are parallel, the Court next weighs the 10 factors in step two of the *Colorado River* analysis.

*1. Whether the state has assumed jurisdiction over property.* The state court has not assumed jurisdiction over any property in connection with the state case, which weighs against abstention. *Huon*, 657 F.3d at 648 ("[B]ecause of the presumption against abstention, absent or neutral factors weigh in favor of exercising jurisdiction.").

*2. The inconvenience of the federal forum.* The federal courthouse is in Chicago, which is located less than 50 miles south of the Lake County courthouse. Because the federal forum is not majorly inconvenient, this factor weighs against abstention.

*3. The desirability of avoiding piecemeal litigation.* This inquiry "does not turn on formal identity of issues but on concerns about the efficient use of judicial resources and the public's perception of the legitimacy of judicial authority." *Tyrer*, 456 F.3d at 756. Because the two cases are parallel, discovery in the state and federal actions will necessarily involve the same evidence regarding Sugrue's alleged misappropriation of trade secrets. Moving forward with this suit would therefore "duplicat[e] the amount

of judicial resources required to reach a resolution." *Clark*, 376 F.3d at 687. In addition to judicial economy concerns, inconsistent rulings in the state and federal cases "could jeopardize the appearance and actuality of justice." *Freed*, 756 F.3d at 1022 (quoting *Interstate Material*, 847 F.2d at 1290). Here, "the state and federal forums have substantially the same parties before them and are litigating substantially the same issues arising from the same set of facts." *Id.* "Staying the federal cases would therefore conserve judicial resources and avoid the potential for the two proceedings to reach inconsistent results." *Id.* (citing *Clark*, 376 F.3d at 687). This factor thus strongly weighs in favor of abstention.

*4. The order in which jurisdiction was obtained by the concurrent forums.* Sugrue filed the initial action in Lake County in February 2024, [16-1] at 1, while Hollister filed the present action in July 2024, [1]. Although Hollister did not file its counterclaims in the state suit until after this action was filed, the state action as a whole still preceded the federal action. Hollister itself recognizes that "this factor weighs in favor of abstention," [25] at 14, although in the Court's estimation only slightly so.

*5. The source of governing law, state or federal.* This federal suit brings claims under both federal and state law. "Although in some rare circumstances the presence of state-law issues may weigh in favor of [ ] surrender, the presence of federal-law issues must always be a major consideration weighing against surrender." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26 (1983) (internal citation omitted). This factor therefore weighs against abstention.

*6. The adequacy of state court action to protect the federal plaintiff's rights.* The Court has no reason to think that the state court will not adequately protect Hollister's rights, and Hollister has not offered any. *See DePuy*, 953 F.3d at 479 ("The state courts are co-equal partners with the federal courts when it comes to protecting federal rights."). Moreover, Hollister is an Illinois citizen and chose to bring its counterclaims in Illinois, even though this Court could have exercised its supplemental jurisdiction over them. *See* [1] ¶ 1; *see Freed*, 756 F.3d at 1022–23; *see also Groves*, 2024 WL 1579395, at *4. In any case, Sugrue only requests a *stay* of Hollister's claims, not a *dismissal*. Although a dismissal would risk Hollister's federal claims becoming time-barred while awaiting the outcome of the state action, a stay allows Hollister "the possibility to revive [its] federal litigation depending on the outcome in state court or in the unlikely event that the state court action is inadequate." *Freed*, 756 F.3d at 1022–23; *see also Loughran*, 2 F.4th at 560. Thus, this factor weighs in favor of abstention.

*7. The relative progress of state and federal proceedings.* The relative progress of the two proceedings supports a stay. While the federal action has not yet progressed beyond the motion-to-dismiss stage, all motions to dismiss in the state action have been decided. [17] at 10. Discovery in the state action is also well underway: The parties have exchanged initial written discovery and are set to complete lay witness depositions by the end of July 2025. [29] at 1. Discovery is scheduled to close by the end of September 2025. *Id.*

*8. The presence or absence of concurrent jurisdiction.* There is a "'deeply rooted presumption in favor of concurrent state court jurisdiction' over federal claims." *Atl. Richfield Co. v. Christian*, 590 U.S. 1, 15 (2020). "Only an explicit statutory directive, an unmistakable implication from legislative history, or a clear incompatibility between state-court jurisdiction and federal interests can displace this presumption." *Id.* (cleaned up). Hollister has not presented any evidence to rebut the strong presumption that state courts have concurrent jurisdiction over the DTSA and CFAA, and courts have found state courts to have concurrent jurisdiction under both statutes. *See, e.g.*, *eSmart Mortg. Centers, Inc. v. Noe*, No. 20 C 7248, 2021 WL 2291073, at *5 (N.D. Ill. June 4, 2021) (state court had concurrent jurisdiction over DTSA claim); *Canna v. Canna*, No. 19-CV-5555, 2020 WL 6203334, at *6 (N.D. Ill. Oct. 22, 2020) (state court had concurrent jurisdiction over CFAA claim).

Citing *Veritas*, Hollister contends that a key factor in determining concurrent jurisdiction is whether facts in the federal suit depend upon issues that must first be decided in the state litigation. [25] at 15 (citing *Veritas*, 2022 WL 17986697, at *5). *Veritas* relied on *Freed* for that piece of its analysis, 2022 WL 17986697, at *5 (citing *Freed*, 756 F.3d at 1023), and the Court simply does not read *Freed* the same way. In any event, for the reasons already discussed, *Veritas* is distinguishable—and therefore not persuasive to this Court in this instance—because the state-court and federal-court claims in that matter were not based on the same set of operative facts.

*9. The availability of removal.* "The ninth factor intends to prevent a federal court from hearing claims that are closely related to state proceedings that cannot be removed." *Freed*, 756 F.3d at 1023. Removal is not available to Hollister in the state action because Hollister and Sugrue are both Illinois citizens and Sugrue did not initially bring a federal claim. *See Home Depot U. S. A., Inc. v. Jackson*, 587 U.S. 435, 442 (2019) ("Section 1441(a) [ ] does not permit removal based on counterclaims at all, as a counterclaim is irrelevant to whether the district court had 'original jurisdiction' over the civil action."). The unavailability of removal favors a stay. *See Loughran*, 2 F.4th at 650.

*10. The vexatious or contrived nature of the federal claims.* The tenth factor weighs in favor of abstention "when the claims and parties in the federal suit could have been included in the original state court proceeding." *Freed*, 756 F.3d at 1024 (citing *Interstate Material*, 847 F.2d at 1289). As discussed, because Illinois courts have concurrent jurisdiction over the two federal claims raised in this suit, Hollister could have brought its DTSA, ITCA, and CFAA claims as counterclaims in the state action.[4] This factor also weighs in favor of abstention. *See Interstate Material*, 847 F.2d at 1289 ("Without presuming [plaintiff's] motives, we see no reason why all claims and all parties could not have been, and still could not be, part of one suit.").

---

[4] Sugrue argues that the tenth factor is satisfied because this federal suit is an "attempt to wear Sugrue down and increase his costs at a time where he has no full-time employment and Hollister has deprived him of the benefits of a lucrative separation package on the pretext that he misappropriated Hollister information." [17] at 11–12. Without any evidence supporting this accusation, the Court declines to base its *Colorado River* analysis on speculation regarding Hollister's motives.

In sum, most of the *Colorado River* factors weigh in favor of abstention. Factor three—the desirability of avoiding piecemeal litigation—weighs strongly in favor of abstention. Only three of the 10 factors—jurisdiction over property, convenience of the federal forum, and the source of governing law—counsel against a stay. Hollister has not established that any one of the 10 factors weighs heavily against abstention. This is therefore an exceptional circumstance in which abstention promotes "wise judicial administration." *Colorado River*, 424 U.S. at 818. The Court stays this suit pending further proceedings in the parallel state action.

## CONCLUSION

For the reasons discussed, the Court finds that the state and federal proceedings are parallel and that the *Colorado River* factors weigh in favor of abstention. Sugrue's motion to stay is therefore granted. [16]. Because the Court has determined that a stay is appropriate, it does not reach the merits of Sugrue's pending motion to dismiss on Rule 12(b)(6) grounds.

The parties are directed to file a joint status report on 8/4/25 indicating the progress of the Lake County litigation unless material developments in those proceedings warrant the Court's attention on an earlier date.

_____
Georgia N. Alexakis
United States District Judge

Date: 5/2/25